State vs. Nelson.

## No. 966.

### STATE OF LOUISIANA VS. CHARLES NELSON.

The power of this Court, in passing upon questions of law, in criminal cases, to look into the·
   *facts* with which those questions of law are blended, is fully discussed in this Opinion.
This Court cannot take cognizance of the evidence upon which a Motion for a New Trial was·
   refused by the Court *a qua*, unless that evidence is embodied in a Bill of Exceptions.
Rules laid down for the conduct of the District Courts, juries and sheriffs; in criminal cases.

APPEAL from the Fifth Judicial District Court, parish of Richland.
   *Richardson*, J.

F. G. Hudson, District Attorney, for the State, Appellee.

Boatner & Liddell for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J.    The defendant was indicted for murder, tried, con-
victed, and sentenced to hard labor for life.

On appeal, he complains :

First.    That the lower court erred in permitting the prosecuting·
attorney to put to a State witness on the stand, during the trial of the
case, the following question :    " *Previous to the killing of the deceased,
did you ever tell the accused that if he did not quit frailing the child, you
would give him a frailing ?* "

Second.    That the lower court erred, in overruling his motion for a
new trial, charging misconduct on the part of the sheriff and jury, in
this :

(a).    That the sheriff, without the knowledge or consent of the court
or of the accused, after the jury had received the charge of the court and
retired, and were deliberating on their verdict, took them to the hotel in
the town for supper, and afterward removed them to the court-house ;

(b).    That the jury, while in the court-house, had access to the law-
books used upon the trial, and did examine them in coming to their
verdict.

Third.    That the lower court ered in refusing a juror named to·
be sworn and heard, as a witness.

1.    The question which the District Judge allowed the State to pro-
pound and the witness to answer does not appear to have been in-
tended to elicit any important or significant fact.    Its object was not to·
prove an offense not charged in the indictment.    It was not intended
to prove a *frailing* of the child, but was merely designed to show the·
*telling* of the witness to the accused.    The fact sought to be drawn

might have been made to appear by a question put in a different and unquestionable form. The question propounded was one of easy answer.

Which ever way it was answered, provided the answerer was categorical, no injury could result to the accused, as the mere *telling* of any thing to him by the witness could not have incriminated him in the least degree. It may well be, however, that the witness, after answering the question, did add details uncalled for, which would have been inadmissible, but the bill of exception does not incorporate what was uttered by the witness in response to the question. The witness could and should have been guarded, at the instance of the accused or his counsel, before answering, and instructed by the court, as to the mode of answering. It was the right of the accused to have requested the judge so to direct the witness ; but it does not appear that any such warning was asked or given. If the witness gave details or stated matters not responsive to the answer, and which should not have been admitted, and which went to the jury unqualified, and which influenced the jury to the injury of the accused, he has no one to blame but himself for not availing himself of privileges accorded to him by law. He cannot now ask this court informally to relieve him, without presenting his grievances in proper form, and even *then*, without showing that they are well founded.

The Court considers, without further light, that the question was irrelevant, and that so must have been the answer, and that neither can have prejudiced the accused.

It is possible, however, that the question was intended to prove some fact forming part of the *res gestœ*, or springing from the act under trial, or which was to be a medium to prove an aggravating circumstance, concurrent with the act charged in the indictment ; such, as for instance, the *intent* of the accused. If the question was so designed, it was legitimate to permit it to be propounded. If the witness, instead of answering categorically, and no further than was necessary, had improperly attempted to amplify his answer, or had actually unduly magnified it, he might have been prevented from giving an unauthorized utterance, or the jury might have been instructed to disregard or ignore the superfluous, uncalled, or unauthorized statement. 3 A. 512 ; 30 A. 457, 601 ; Greenleaf, part 3, ch. 3, § 434 ; 2 Russell on Cr. pp. 694, 698 ; Wheaton's. Crim. L. v. 3, 3090.

It cannot be perceived how the answer of the witness, if it was. categorical and proper, could have proved detrimental to the accused, or how it could have proved of any significance to the prosecution.

The bill of exception is not sufficiently full and explicit to enable us to say that the ruling of the District Judge (which we must presume to

be correct until the contrary is established) was erroneous and wrong-fully made.

We cannot afford relief to parties who do not place their grievances in the only form in which the law requires them to be framed to demand and obtain our attention.

2. We do not consider that we lack authority to revise the judgment of a lower court, refusing a new trial in a criminal case, over which the Constitution vests us with jurisdiction.

It was formerly and for a long period considered that in limiting the jurisdiction of the Supreme Court in criminal cases before them to questions of law alone, the constitution had, *in terms*, excluded from them all cognizance of questions of facts, and, therefore, that the Supreme Court had no power to inquire whether the discretion of the lower court in refusing a new trial in such cases, on the ground of misconduct of the jury, or want of due diligence in procuring the attendance of witnesses, was or not properly exercised.

2 A. 838, 983 ; 3 A. 500 ; 4 A. 438 ; 5 A. 398 ; 6 A. 311, 593, 657, 691 ; 7 A. 47, 122, 284, 531 ; 8 A. 114 ; 10 A. 501 ; 11 A. 478 ; 13 A. 45 ; 14 A. 79, 673, 785 ; 20 A. 236 ; 22 A. 9, 468 ; 23 A. 149, 433 ; 25 A. 418 ; 30 A. 305, 539, 1324.

A review of the contradictory, vacillating, unsettled, and unsatisfactory jurisprudence of the State and of the conflicting foreign authorities by which it was sometimes propped, leaves the mind, however, under the fortunate and salutary impression that the Supreme Court would have the power to review the ruling of the court in such and similar instances, when the facts, upon which it was made, are established and presented, with the question of law submitted *in a bill of exceptions*.

Had that jurisprudence absolutely consecrated the doctrine that the Supreme Court has no power to revise such ruling under any contingency, even when the facts are embodied in a bill of exception, we would unhesitatingly decline to assume to countenance, and would repudiate such doctrine, however ancient, for we would then have dealt with it as with one fundamentally erroneous, which, if sanctioned, might prove exceedingly oppressive to the accused, in recognizing in the lower judge arbitrary powers bordering upon autocracy, to which no one can claim that any particular sanctity attaches under our system of government. The actions and rulings of judicial officers, presiding over the trial of cases in which the liberty or life of persons is at stake, should always remain open to criticism, revision, and correction by the superior legitimate authority in proper cases.

It unquestionably was the object of the framers of the different constitutions of this State, which limit the jurisdiction of the Supreme

Court in the criminal cases specified to questions of law *alone*, that such court should not have the power of reviewing the facts proved on the trial of the case and passed upon by the jury, and so, that it should not have the right of determining, upon those facts, the guilt or innocence of the accused; in other words, of *reviewing the verdict of the jury*. It was deemed by them that such matters were to be left *solely* and *exclusively* to the determination of competent juries, and that with matters within such province the appellate court should not interfere. They, however, have provided for the security of the accused, whose rights are vigilantly protected, that the Supreme Court should have the power of passing upon *questions of law*.

Questions of law, as a rule, are so intimately connected or blended with questions of fact, that it is almost impossible to consider the former without dealing with the latter. The facts may have been admitted or agreed to, or may have been proved, leaving the appreciation thereof, or the application of the law thereto, to the court; but in any contingency, there must necessarily exist a certain order or condition of facts, upon which, as a basis, the decision of any question of law can be predicated.

In the issue before us, the question would be:

"Under the facts which the record establishes was the accused entitled to a new trial?"

A mere question of law would, after all, be presented.

The prohibition to the exercise of the jurisdiction of this Court lies to its power to find pure questions of facts, such as were submitted to and found by the *jury*. The inhibition does not extend to the questions of law based upon facts submitted to and determined by the *judge*. Of course the Court could not review, under any circumstance, the verdict of the jury on the facts before them, on the trial of the accused.

This Court has, therefore, authority to consider the facts *established* on a motion for a new trial, when they are such as were not submitted to and passed upon by the *jury*, but were considered and decided by the *judge* only. It has also authority to determine whether under the circumstances of this case the lower court should or not have granted the new trial asked, provided the matter be presented in the proper form.

The lower court on the motion for that relief considered the *affidavit* of the defendant, as well as the evidence introduced to show misconduct on the part of the sheriff and jury. That testimony was taken in writing. The lower judge overruled the motion for a new trial, but *no bill was reserved*. Under the jurisprudence as it is, this was a grave omission.

Had it not been ruled otherwise, we would unhesitatingly hold that it was unnecessary to present those facts in the shape of a bill of exceptions, as it may well be that the exceptor and the judge may disagree

as to what the facts proved were, make different statements, and this to the mystification of the appellate court. We could not perceive, even were it otherwise, how a bill could be required, as a bill of exception is intended solely to put in the record matters which, without it, would not be found in it.

However incongruous the ruling may appear, it is infinitely preferable that it do exist than if it did not ; as in the latter case, the accused would be without remedy against the adverse ruling of the lower judge, as this Court could not extend any.

The difficulty of a disagreement between the judge and counsel as to the facts proved may well be obviated by requiring the testimony to be reduced to writing, and, next, annexing it to a bill of exception, as a component part thereof, it being the clear duty of the judge in cases of motions for a new trial, involving facts not submitted to the jury, to have such testimony put of record at the instance of either party, as the same is to be weighed, *first*, by the judge *a quo*, and, *next*, by the appellate tribunal.

In the instance before us, both the evidence and the overruling of the motion for a new trial are of record ; but as the matters urged as grounds for a new trial are not presented in the form prescribed by long existing jurisprudence, we do not feel authorized to pass upon the same; and, therefore, cannot disturb the refusal complained of. While we do not propose to pass upon the sufficiency of the evidence to justify a new trial, we make it our duty, for the better administration of justice, to take occasion to express our views on the law which should regulate courts and juries after submission of a criminal case, in instances like those presented by the record:

1. After a jury has received the charge of the judge, and has retired to deliberate on its verdict, it should not be promenaded through the streets of a city or town, or outside of its deliberation room. The jury should be retained in that room, where the meals and refreshments to which they are entitled while engaged in the discharge of the onerous and important functions imposed upon them can be furnished them, the latter to a reasonable extent. The dangers attending such removal of juries from their room of deliberation, unless in cases of indispensable necessity, which exposes them to improper communications, by language spoken, written, or signified with outsiders who may so easily convey reprehensible information, or offer criminal inducements, unnoticed by the officer in charge, at once suggest themselves to an experienced and impartial observer.

Against such practices, in cases of felony, we make it the duty of district judges, of district attorneys, and of sheriffs, particularly, to guard.

2. The proper course for juries whose members desire information touching the law involved in cases submitted to them, is to apply to the presiding judge, who is authorized to charge them accordingly, in open court, in the actual or constructive presence of the parties, and from whom it is safe for them to take the law to be as by him officially expounded to them. 11 A. 81, 206, 429 ; 12 A. 264, 386.

It would be irregular for the prosecution or for the counsel of the accused, without the sanction of the court, or the consent of the accused or knowledge of the State attorney, to submit books and authorities to the jury. It would be even imprudent to allow the jury to have access to law-books found in their room or elsewhere, without permission of the court or consent of the parties, as jurors who have not been trained to the knowledge and construction of the law may well misunderstand and misapply it, to the injury as well of the State as of the accused.

Wheaton's Am. Crim. Law, ¿ 3138, 3149 ; Graham & Waterman on New Trials, vol. 2, p. 332; R. S. 991 ; 30 A. 539 ; 29 A. 715 ; 19 A. 143.

3. The proposition that a juror sworn to do his duty, and who is presumed to have done it, cannot be offered as a witness to impeach his official act by showing under oath his own misconduct, or that of his fellow-jurors, in disregard and contempt of the .law, is too well established to be for one moment questioned. The court must derive its knowledge of the misconduct of juries from some other source than the jurors themselves. 3 A. 435 ; 6 A. 653 ; 1 N. S. 514 ; 11 L. 141.

It is therefore ordered that the judgment appealed from be affirmed.

---

### ON PETITION FOR A REHEARING.

It is due to·the counsel who represented the accused, both in the lower and Supreme Court, to say that they have done so with a learning and zeal which are the more creditable, as the defendant is a pauper, incapable of offering any remuneration for the valuable services rendered him. No blame whatever can be attached to them for not presenting the matters incident to the motion for a new trial in the shape of a bill of exception, as the bench and bar have been, for a long series of years, in doubt as to whether the facts submitted to the judge in such a proceeding could at all be reviewed by the appellate court. District Judges have gone so far as to refuse permitting the testimony from being taken at all in writing, and in this they were sustained.

It is fortunate, however, that the testimony was so reduced in the present instance.

We readily admit the uselessness of a bill where the evidence and the ruling are of record ; but think that we have gone far enough *in favorem libertatis civis*, without upturning a sort of irregular practice,

which was a step in the right direction, and which may be viewed as a protest against the refusal of the judge to grant the relief sought. The rulings in the cases of Swayze and Gunter, 30 A. 1323, 537, do not lay down that this Court can review the facts on a motion for a new trial, in the absence of a bill of exception. They refer to the 11 A. p. 478, which requires the taking of such a bill. The opinion which we have rendered in this case itself shows how inconsistent and superfluous we consider such a practice: but we are not prepared to alter our views presently on the subject.

For the quiet of the consciences of the counsel who have conducted the defense, we will take the liberty of saying that even had a bill of exception been taken in this case embodying the *affidavit* and the testimony produced on the motion for a new trial, and had we to express an opinion on that evidence, we would have considered it as insufficient to support the alleged grounds of misconduct on the part of the sheriff and jury.

The acts complained of were tolerated under what was considered to be admitted rules in such instances. Those which we have laid down are intended to operate prospectively, and cannot, in justice, be applied to cases originating previous to their announcement.

Rehearing refused.