(35 South. 710.)

No. 14,990.

STATE v. FORBES.*

(Nov. 30, 1903.)

CRIMINAL LAW—TRIAL—TALES JUROR—COMPETENCY OF JURORS — HOMICIDE — DECLARATIONS OF DECEASED—EVIDENCE—QUESTION FOR COURT—COMMON LAW—ARGUMENT OF COUNSEL—INSTRUCTIONS.

1. The opportunity was given to the defendant to have his witness heard, although he, the witness, was not present when the case was called for trial.

2. A deputy sheriff who is not performing any of the duties of the office at the time may be a tales juror, if he does not invoke exemption.

3. A member of the general venire for the term may be called in and sworn, although absent when called, if he comes in before the jury is complete.

4. A mere suggestion to the district attorney by a juror not to take a person called on the jury, on ground that does not give rise to the least impression of prejudice against the accused, is not ground to declare him incompetent from serving as a juror.

5. The ruling of the court permitting expert witnesses to remain in the courtroom during the trial is not ground to set aside the verdict.

*Rehearing denied January 18, 1904.

The rule is largely left to the discretion of the trial judge.

6. If the declaration of the deceased is associated with and relates to the homicidal deed (even though separated from it for two minutes) it is admissible.

7. The question did not turn upon any refusal of the clerk of court to take down the testimony under the law, which requires him to take down testimony when there is variance regarding the facts between the trial judge and counsel. The clerk did not refuse to take down the testimony. There is no issue in that respect. There is sufficient evidence before the court to clearly present the issue regarding asserted overt act for which defendant contends.

Decisions have repeatedly held that it is within the power of the district judge to decide whether there is any evidence at all, or whether there is sufficiency of evidence. State v. Labuzan, 37 La. Ann. 490; State v. Janvier, 37 La. Ann. 644; State v. Spell, 38 La. Ann. 21.

8. It has been decided that, where the common law prevails as the rule of decision in a state, the adjudication in regard to a particular matter relating to public policy or morality, "settling a principle in a manner regretted expressly by the English judges, it must be followed even where the question for the first time comes before the state court, whose business it is to enforce the established common-law rule, until the Legislature shall see fit to change it by express enactment." Wells, Stare Decisis, c. 10, § 1.

9. Intemperate utterances of counsel for the state in argument should have been restrained; but they do not present reversible grounds.

10. After a case has been argued and submitted to the jury, after the judge has commenced to deliver the charge (no request having been previously made of the judge to reduce his charge to writing), it is too late to interrupt the proceedings and bring on delay to write a charge. The jury at the time the request was made for delay had been locked up three days.

Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Fifth Judicial District Court, Parish of Winn; Marion Franklin Machen, Judge.

Joe Forbes was convicted of manslaughter, and appeals. Affirmed.

Wallace, Moss & Jones (W. M. Wallace, of counsel), for appellant. Walter Guion, Atty. Gen., and Allen Byber Hundley, Dist. Atty. (O. M. Grisham and Lewis Guion, of counsel), for the State.

BREAUX, J. The defendant, Joe Forbes, was indicted by the grand jury of the parish of Winn on the 20th of July, 1902, on the charge of murder. He was called upon to answer to this indictment. He pleaded not

guilty. On the 10th day of August following he was placed on his trial, and on the 13th day of that month the jury found him guilty of manslaughter. The motion for a new trial was interposed in his behalf by his counsel. It was overruled, and thereafter he was sentenced to the penitentiary for the period of 20 years, and to pay a fine of $100 and costs.

He asked for and obtained an appeal, which is before us for review.

1. The first ground upon which defendant asks for a reversal of the verdict and sentence is set forth in the bill of exception, stating that on the 10th of August, just before proceeding with the trial, one of the witnesses for the defendant failed to answer when called. He states further in this bill of exception that he was not ready on account of the absence of this witness; that an attachment had been issued for this witness; that he had objected to going to trial before the return of the attachment.

The court, on considering these objections, ruled that the accused should make a showing for delay or proceed with the trial.

The counsel for the accused here contends that he could not properly be compelled to make a showing for a continuance or delay. The narrative of the bill of exception, inserted by the court, states:

"When the case was called for trial, and the witnesses for the defense and state were called, all answered except the witness R. J. Winstead. The state answered ready, and the defendant's counsel asked for an attachment for the absent witness, which was issued. The district attorney then conveyed to the court that the witness was on his way to court, and would arrive in time to testify, and in case he did not arrive he (the district attorney) would admit what the witness would swear or what the defense proposed to prove by the said witness, and upon this state of facts the court ordered the case to be proceeded with." The court further states "that, in case his ruling was not entirely correct at the time made, it was fully remedied by the fact that the witness in question did appear in court on the first day of trial, and was by order of the court put under the rule with the other witnesses, and remained · there during the trial, but was never sworn, although the court informed de-

fendant's counsel that he was present, had been under the rule, and was by the court tendered to counsel to be sworn."

Manifestly no prejudicial error could have been committed if this statement be taken as correct. It is not questioned, as relates to the facts set forth, and we therefore do not hesitate to accept it as true. The witness was present sufficiently in time for the trial, and the fact that he was not examined by defendant at all, as a witness, is a complete answer to the argument presented in his behalf.

The purpose is always to afford an accused every opportunity to have his witnesses heard. It is not shown here that this opportunity was denied, or in any way was curtailed.

2. After the court had overruled the motion of defendant applying for continuance or delay, as just mentioned, the attorneys for the accused asked for time to prepare their bill of exceptions and have it signed. The court refused to grant the time, for the reason, as stated, that "it would have been a useless consumption of the time of the court to stop the proceedings and give counsel time [to write] up each bill of exception."

Counsel for accused were not entitled to delay as a right, in the absence of anything showing undue or prejudicial haste. We are inclined to agree with the district judge that the administration of justice would be very slow if delays were granted always to prepare bills of exceptions.

But the insistence of defendant on this point is that the accused has the right to a complete bill of exceptions at the time taken; citing Act No. 113, p. 102, of 1896.

This act requires the court, at the time and without delay, to order the clerk to take down the facts upon which the bill has been retained.

"Which statement of facts shall be preserved among the records of the trial, and if the case be appealed shall attach to the bill of exception a certified copy thereof, which shall be taken by the appellate court as a correct statement upon which the bill of exception is based." From the act cited supra.

Here there were no facts which fell within the duty of the clerk to note and insert

in the bill of exceptions as part thereof. Counsel for the defendant did not call upon the clerk to comply with the act cited, but requested the court to grant a delay to them to prepare the bill.

We will not assume that the clerk neglected to comply with the act in question, when it does not appear that at the time the defendant complained and reserved a bill on the ground that there was refusal to take down testimony by the clerk to insert in the bill.

3. Another bill of exceptions reserved by the defendant's counsel sets forth that the court had ordered a summoning of talesmen jurors. J. B. White, a tales juror, was called by the state. On his cross-examination by defendant's counsel on his voir dire he stated that he was a deputy sheriff. The court added the following to the bill:

"The tales juror stated that he had been sworn in as a special deputy sheriff, but he was not doing any work at that term of the court, nor had he done any work for some time; besides, the exemption was personal to the juror, which he could waive if he desired to do so, but not disqualifying him as serving as a juror."

The office of special deputy sheriff, who is not on duty at all at the time, presents rather an attenuated ground for exemption at best; and when this is considered in connection with the fact that this special deputy does not invoke the exemption it leaves no ground to set aside the verdict, because, as defendant contends, he had to interpose the challenge in order to exclude this special deputy from the jury.

The exemption under these circumstances is considered to have been one, at most, exclusively personal.

4. By another bill of exceptions it appears that the name of the juror Heard had been drawn, and that after he had been called at the door of the courthouse the court ordered an attachment to issue for him, and then proceeded to impanel the jury until the venire had been exhausted. It was at that time, so states the trial judge, that the juror was brought in under attachment. He was accepted by the state, and presented to the defense, and was accepted, subject to the objection they had urged. The court states:

"The juror Heard showed that he was a fair, impartial, and intelligent juror, and fully competent to serve as such, and that the right of defendant to trial by a fair and impartial jury was not impaired. The box had been exhausted, and Heard was the only remaining juror."

The position of defendant at this point is that he had exhausted all the challenges; that two jurors had been impaneled after this juror had been called and others had been rejected; that there were other names in the jury box from which the twelfth juror should have been drawn.

There is here difference between the court and counsel for defendant regarding the facts. Be this as it may, we have not found that there is reversible error in this ruling. Primarily, there was reason to call on a juror to be sworn who had been drawn as one of the regular venire for the term.

A juror absenting himself has not it in his power to avoid the service which he owes. In this matter something must be left to the discretion of the trial judge in impaneling the jury.

The juror had been brought in, and it was proper at that time to have him sworn, if not found incompetent on other grounds. The trial judge had not abused his discretion, as we think. The following decisions, we take it, sustain that view: State v. Harris, 34 La. Ann. 118; State v. Sandoz, 37 La. Ann. 376; State v. Gonsoulin, 38 La. Ann. 459.

5. In the next bill of exception before us, retained by the accused, it is shown that McLamore, on his cross-examination to test his competency, was asked if he had not approached, on the morning of the day the case was called for trial, the district attorney, and suggested to him not to take J. P. Cook on the jury for reason that a daughter of Cook had married a brother of Joe Forbes, the accused.

The juror on his cross-examination replied that he was influenced by good feeling for Cook, and his desire to prevent his being placed in a position which might prove disagreeable to him. This juror added that he had no prejudice for or against the accused. He was challenged for cause.

We think the ruling of the trial judge was correct, and that there was no ground to sustain defendant's challenge for asserted

causes. Here again counsel for defendant complain of the court's refusal to grant time to take testimony and prepare bills of exceptions. The court here inserted as part of the bill of exceptions that he, the court, did not refuse to have the testimony of McLamore taken down "upon the point in question, but, to the contrary, ordered the clerk to take it down; whereupon counsel for the defense insisted on the entire examination of said juror on his voir dire being reduced to writing, and this court refused, for the reason that it was a useless consumption of time, and when this court made this ruling the counsel declined to take any of it down in writing. There was no question as to the competency of the juror on any other point."

The court and counsel for the defendant evidently did not entirely agree in regard to certain facts, as made evident by the foregoing. These unfortunate differences between the trial court and counsel will arise regarding facts.

The court has heretofore accepted the statement of the .district judge. It has become a rule imbedded in jurisprudence. State v. Moore, 38 La. Ann. 66; State v. Meaux, 108 La. 118, 32 South. 398; State v. Prade, 50 La. Ann. 914, 24 South. 642.

We have found no reason to change the ruling in this instance. The accused was given the opportunity to have all the facts taken down relating to the point at issue. This, because all the testimony was not taken down, was declined by the counsel for defendant. No attempt was made towards proving that there was necessity to take all the testimony, as requested by counsel for defendant.

In the absence of such an attempt, it is fair to infer that sufficient opportunity was afforded to take down all the facts upon which the bill had been reserved. There must be a limit to the right of the accused in this particular. In case of difference between counsel and the court regarding the extent or limit to which the clerk should write down the facts, it then devolves upon defendant, through counsel, to show that which he desired to have copied, and in some respects to make it appear that it was testimony bearing upon the ground reserved in the bill.

The accused should not remain content after asking, in general terms, that all testimony be taken down, but he must be held to go one step further, and show why it is that in his case it becomes necessary to take down all the testimony. This the accused did not do, and did not make the least attempt to do.

6. We are brought to the consideration of the court's ruling in refusing to sustain the objection of defendant to the testimony of the witness Dr. B. H. Talbot on the ground that he had not been under the rule of the court.

The court's statement is, if accepted as correct, that the request by the counsel for defendant for the application of the rule was expressly withdrawn by them to the extent that expert witnesses were concerned, and the enforcement of the rule was confined, because of this withdrawal by counsel, as just stated, to witnesses who were to testify as to facts.

In our view, the court can, with consent of all parties, limit the rule, more especially when witnesses are expert witnesses.

7. In another bill of exceptions before us for review it is stated that witness Allen had been asked to draw a diagram of the premises where it was charged the asserted murder had been committed. This witness, it seems, could not or did not draw a satisfactory diagram; whereupon Mr. Grisham, who was one of the attorneys prosecuting for the state and was sworn, drew a diagram.

The complaint of defendant is that this witness was not under the rule of the court; that the diagram contained measurements which were material to the cause; that he had drawn this diagram from one that he (this witness) had previously made. The court informs us by the narrative of the bill that this witness was sworn as a witness and made the diagram in question under oath, and none of the witnesses were permitted to testify from the diagram until they stated under oath on the stand, as witnesses, that they identified it as a correct diagram of the ground and premises where the killing took place.

The court's order, we think, under the circumstances, did not prejudice the accused. All the witnesses who testified with refer-

ence to the diagram swore as to its correctness. The objection was not one which could go to the admissibility. It remained for the defendant to destroy the effect of this diagram by showing wherein it was incorrect, if it was incorrect. State v. Thompson, 28 La. Ann. 187.

The witness by whom it was made fell within the class usually known as expert.

8. Here again, as made to appear by another bill of exception, the attorney for the accused asked for time to prepare their exceptions. The court again refused, stating that the delay required was not one it was bound to grant.

We understand that the court desired, reasonably, to expedite trial of the case, and from that point of view we must hold that the request was not improperly refused. The record does not disclose that there was necessity for this delay. The bills of exception themselves do not suggest that they were of such a character as required time, because of facts or of law, to prepare them.

The drawing up of these bills does not appear to have been attended with great difficulty. The trial judge has it in his discretion to decline to grant delays for preparing a bill of exceptions, if in his judgment no such delay is necessary.

9. The next bill states, in substance, that Miss Lizzie Ray, a witness, who had seen something of the difficulty, was asked if Patterson had made threats against the accused, and if she had informed the defendant of these threats. (Defendant, it seems, aimed a blow at Patterson, which missed him, and struck Adams, which was fatal.)

The court says that the evidence sought to show "threats by a person no party to the difficulty and at a time too remote to form a part of the res gestæ; that no overt act had been shown as a basis for admitting the testimony."

The purpose was to prove the threats, it was said, had been made.

Here again there is deplorable variance between counsel and the court. The court sets forth, as already shown, that the threats had been made by a person not a party to the difficulty at a time too remote to form part of the res gestæ, and that no overt act had been shown.

111 La.—16

Taking these facts as true—and they are the only facts which we can consider under repeated decisions—the testimony was not admissible. It reduces itself purely to a question of fact, and the law applying to the state of facts shown is too plain to admit of discussion.

10. The testimony of the witness Orange gave rise to some objection. As this bill of exception is not signed by the judge, we pass it without comment.

"Bills of exception attached to the record, but unsigned by the trial judge, will not be noticed by the court." State v. Harris, 39 La. Ann. 228, 1 South. 446.

11. In the order in which the bills of exceptions have been copied in the transcript, this brings us to the following bill of exception.

The complaint, as made to appear by this bill, is that the court ordered the witnesses to be sequestered except the expert witnesses. The objection is that the testimony of these witnesses was material to an extent that if the accused was convicted at all it would be on this testimony.

The court's ruling was that the expert testimony here referred to was that of physicians who were summoned to testify regarding the cause of death, "which could be based upon the history of the case as detailed by the witness and as shown by the character of the wound received, and that upon that theory it was proper for expert witnesses to hear the evidence."

The doctrine is, says Mr. Bishop in his work entitled "New Criminal Procedure," "that for the promotion of purity in the evidence the trial court has the discretion to exclude witnesses waiting to be examined."

And again:

"It is for the court on motion of either party, and almost as of course, yet not of strict right, to direct the retirement of witnesses to a separate room." Vol. 1, p. 1190.

In regard to a similar objection this court said:

"The next bill was to the refusal of the judge to order the separation of the witnesses. This was a matter within the sound discretion of the judge a quo." Citing 1 Greenleaf, Ev. pp. 432, 479.

After the court had overruled the objection as before stated, again counsel for the accused asked for time to prepare their bill of exception, which was not granted, and bill was reserved to the court's ruling. We will here state that we do not understand that the trial judge refused counsel time to prepare their bills and present them to the court to be signed. The request was, as we infer, to stop the trial in order to complete these bills. We are clear in the view that no such delay could be required.

12. We are informed by a bill of exceptions that a witness, Brewer, for the state, stated that he was present at a difficulty a few hours before the killing of W. M. Adams, between Joseph Forbes, the accused, and witness Patterson, and the deceased, Adams.

The following was the question propounded to him:

"Mr. Brewer, at the time of this difficulty [meaning the difficulty which occurred a short while before the difficulty in which Adams received a lick], was there any threat made by any one, or any attempt upon the life of any one, and, if so, when?"

This the court excluded on the ground that if threat was made it was by a third person not a party to the difficulty; it was not part of the res gestæ, as it was too remote; there was no overt act shown; and, lastly, that the accused was the aggressor.

The bill, as drawn, presents no question connected with the case. It is broad, general, and vague. It recites no fact giving ground for the decision of a point of law. It does not mention by whom threat was made or on whose life.

A bill of exception which requires the aid of inference is not the bill required. It is necessary that it should set forth the facts or issues sufficient to inform the court of what is exceptionable. The per curiam throws no light upon this bill of exception. It is as general as the bill itself. State v. Red, 32 La. Ann. 819; State v. Nelson, 32 La. Ann. 842; State v. Green, 36 La. Ann. 185; State v. Johnson, 36 La. Ann. 852.

13. The witness Patterson, to whom some reference has heretofore been made, was asked if he had a "gun" or "pistol," if he had a difficulty with the accused, and if he had made threats. The court ruled that he was not a party to the difficulty; that his state-ment, remote as it was, was not a part of the res gestæ—no overt act had been shown; that the accused was the aggressor.

This statement of the district judge was accepted without question from counsel representing the accused. There is no other statement before the court. The one fact, if there was any foundation, that this witness had a gun or pistol, is not material to the issue as made up by the different bills in the record. The court's ruling on the ground, as stated, was not error.

14. The accused was sworn as his own witness, and was asked to detail to the jury the circumstances connected with the difficulty in which the deceased, W. M. Adams, lost his life. The statement in the bill is as follows:

"He stated that he had started from the place of business of Adams, the deceased, to his own (witness') place of business, and that after a step from the gallery of Adams he saw Adams, the witness Patterson, and the witness Allen at about the distance of eighteen feet; that the witness Patterson attempted to draw a gun from his pocket, and that the accused, believing that he meant to do him bodily harm, rushed upon him, and struck him with a shotgun, and that the lick landed upon the head of the deceased, and not upon Patterson, as he intended; that at this time no witnesses testified as to the attack of Patterson or upon that point at all."

This witness was then asked if Patterson had had previous difficulty with him that evening; if he had made any threats to do him bodily harm, and such threats had been communicated to him.

The court in ruling upon this point sets forth the following state of facts, to wit:

"It had already been established by the uncontradicted testimony of several witnesses, whose credibility was not questioned, that the accused, Forbes, just prior to the difficulty in which the deceased lost his life, left his place of business just across the street from the place of business of the deceased, and made directly the place of business of the said deceased, and shouldered the double barrel shotgun of the deceased, and loaded it by putting in it one shell, all the loaded shells he could find in the house, and ran out of the house in the opposite direction from his own place of business, to a point

some 20 feet away, where the deceased, assisted by one Allen, had charge of one Patterson, was shown to be in a paralyzed state of intoxication, carrying him to put him to bed in Adams' house, and struck the blow which resulted in the death of the deceased, Adams, some ten or twelve hours afterwards."

There being no testimony as to the attack on the part of the deceased, or Patterson, or any one else, that the accused was the aggressor, sought to provoke the difficulty, delivered the fatal blow, is, substantially, the statement. The court was of the opinion that the evidence was not admissible. The correctness of the facts, as stated, was not challenged, and the point is before us on that statement.

From it we are constrained to conclude that there was an overt act on the part of either Patterson or the deceased, and that in consequence the point was correctly decided.

### Bills.

Other bills were taken upon grounds similar, which we will review under this head.

(a) The witness Patterson, at another time during his cross-examination, was asked by the attorney for the accused if there had been any difficulty between him and the accused. The judge states with reference to this asserted difficulty that it was so remote that it formed no part of the res gestæ. Besides, the party sought to show difficulty between the accused and Patterson, who was not a party to the transaction in which the deceased lost his life. No other attack was shown. On the contrary, the accused was the aggressor.

If this is a correct statement, as we judge it is, the alleged difficulty between this witness and the defendant had no bearing on the trial.

(b) For a similar reason the evidence of the witness Deloney, who was asked if he heard of any threats made against any one on the evening just prior to the difficulty in which Adams lost his life, was not admitted to go to the jury.

(c) Again, the witness Miss Mary Allen was asked if Patterson stated in her presence that "he would get Joe Forbes before night."

The court again enforced the ruling made on grounds previously stated, and adds that the testimony was not competent to show threats made by any one else than the deceased, with which he was connected in any manner, and was not even present when these threats were made.

It occurs to us to say at this time regarding the asserted overt act that repeatedly it has been decided by this court that the sufficiency of evidence and the credibility of witnesses are left to the discretion of the trial judge, and the consequent admissibility vel non of the offered testimony to prove threats or the dangerous character of the deceased.

A number of decisions were handed down upon the subject years ago. The Ford Case is well known. It followed decisions that had been rendered, and in turn has been followed by decisions since.

The stability of judicial decisions is of the utmost consequence.

"I cannot legislate," said the great Lord Kenyon, "but by my industry I can discover what my predecessors have done, and I will tread in their footsteps." Quoted in a case from California—Welch v. Sullivan, 8 Cal. 188.

It may be thought that this bears application to the rule of property only, but it has not always been thus limited; it applying as well in criminal cases.

"It had been held that, where the common law has been adopted as the rule of the decision in a state, the adjudication in regard to a particular matter relating to morality or public policy, settling the principle in a manner regretted expressly by the English judges, must be followed even where the question for the first time comes before the state court, whose business it is to enforce the established common-law rule until the Legislature see fit to change it by express enactment." Id.

We deem it proper to call legislative attention to the subject. It should, in our opinion, be considered by the lawmaking power, and a remedial statute adopted changing the rule laid down in repeated decisions.

15. In another bill of exceptions it appears that the witness Deloney was asked if he knew Patterson and his disposition—wheth-

er a troublesome man, and inclined to raise a difficulty.

The court rejected this testimony, stating that, as he had stated before, Patterson was no party to the difficulty, and the other grounds mentioned before.

Further, this witness was questioned in regard to the pistol, to wit:

"Did any one call on you on the evening just prior to the difficulty in which Adams lost his life to get a pistol from you? If so, who called?"

The court stated that the question was too general, and, if admissible at all, should have been confined to the deceased, Adams.

(e) The witness Ray was asked to state the cause, if he knew, which led to the striking in which Adams lost his life. The bill states that it had been shown by witness at this time, and especially by witness Allen, that the blow struck by Joe Forbes, the accused, was intended for Patterson, and not for the deceased.

By the Court: "There had been no testimony introduced showing who the accused intended to kill, except the testimony of the accused himself, when on the stand as a witness in his own behalf; and when this question was asked witness Ray the state objected to witness detailing any difficulty, except any difficulty that might have occurred between the defendant and the deceased, Adams."

The court stated at the time of the ruling that the witness Ray would be permitted to state or detail any difficulty between the accused and the deceased, Adams, at the time or previous to the killing.

"The witness Allen never testified as to whom the blow struck by Forbes, the accused, was intended for; he could not have done so, except as a matter of opinion."

Taking the foregoing statement of facts into consideration, there is but one conclusion possible, and that is that the ruling was correct. We have not found the correctness of this statement challenged in the manner required.

16. This brings us to another question, different from those we have just reviewed.

Here the witness Robert Brewer, the bill relates, after stating that he was not present at the scene of the difficulty, was asked by the state what the deceased said in the house about his head, or about the difficulty. Defendant objected to the question. The trial judge overruled the objection, and stated that this testimony was admitted as part of the res gestæ; that the statement was made by the deceased within the two minutes after the lick, and when the deceased had gone about 30 feet.

Declarations of the deceased, and the fact to which it relates, are sufficiently proximate, as stated by the trial judge, to be admissible. The witness could be heard to state that the deceased complained of his head and the cause. It is sufficiently contemporaneous with the difficulty to have it considered part of the res gestæ.

17. The defendant took several bills of exceptions to the statements made in argument by counsel who were assisting the state in the prosecution.

By the first bill of exceptions it appears that the counsel stated to the jury as follows, to wit:

"After he had eulogized the state of Tennessee, her churches, her civilization, etc., he used this language: 'And I know what a Tennessee jury would do. The defendant, the accused at the bar, would meet death at the hands of a Tennessee jury.'"

The court says in regard to this statement in argument that the counsel was making his deduction and making general comparison in the final conclusion of his argument. The court did, however, instruct the counsel to confine his argument to the facts in the case. The court is of the opinion that the jury was not by the remarks influenced, as the verdict was one of manslaughter instead of murder.

18. In the next bill of exception this counsel used the following language:

"Mr. Strickland [who was one of the jurors], if you are willing for your boy to be raised in a gambling den and grow up a gambler, then acquit Joe Forbes. If you are not willing for your boy to be raised in a gambler's den and grow up a gambler, then convict Joe Forbes."

By the Court: "The court instructed the stenographer or clerk to reduce the statement of counsel to writing; but the counsel for the state and defense could not agree to what had been said, and in order to avoid a personal discussion, and the useless and pur-

poseless consumption of the time of the court, the court told counsel to corroborate what he understood was the language used, and the court would accept it, which has been done."

19. It appears that this counsel also used the following language, to wit:

"We have great railroad systems. Every conductor that leaves your station in the morning has railroad instructions in his pocket. As long as they obey, everything works well; but if a drunken engineer does not follow his instructions, and runs his engine at a high speed of seventy-five miles per hour, behold! the scenes would change. Two great Mogul engines clash together, and scattered commerce. Grief and wails of dying and wounded humanity lie in its wake. That drunken engineer, gentlemen of the jury, has done no more for that great railroad system than the accused has done to the state of Louisiana."

The court states as part of the bill that the attorney was drawing his conclusion and making his deduction from the testimony, and when the objection was made the court instructed counsel to confine himself to the record.

We are decidedly of the opinion that it was error not to have stopped that line of argument; but it remains that it is not every error committed during the progress of the prosecution that could authorize the setting aside of the verdict. It must be error of such great import as to give rise to the belief that if it had not been for this error a verdict different from that returned would have been given.

If the accused had been found guilty as charged, our conclusion would perhaps have been different, for it would have shown some influence growing out of the intemperate remarks. We have seen that he was not found guilty of murder, but of manslaughter.

20. Another bill of exception was reserved to the refusal of the trial judge to reduce his charge to the jury to writing.

The court states that the request was not seasonably made; that it was made after he had commenced to deliver his charge to the jury. After a cause has been submitted to the jury, and the trial judge has commenced to deliver his charge orally (no request having been made previously of the judge to reduce his charge to writing), it is too late to interrupt the proceedings.

The jury at the time the request was made for this delay had been locked up for four days and nights. We must decline to reverse the verdict on the ground that the charge should have been written at that late hour. In addition to delay already referred to, delays were requested by the counsel for defendant several times during the trial, and were refused by the court. We have referred to this request specially in two of the bills of exceptions.

We will not state generally, as applying to all the other bills on the subject, that it is not the practice to grant counsel delay to enable them to write out their bills and have them signed. Had the court's ruling been questioned as to the correctness of the facts stated by the court, and application had been made to have the facts testified to by the witnesses, and taken down, a different question would present itself. The refusal would have been a patent error.

The question does not arise upon any refusal of the clerk to take down testimony. Under Act No. 113, p. 162, of 1896, we have seen that there is ample evidence before the court to clearly present the issue which defendant contends regarding the asserted overt act of the deceased.

This completes our review of the proceedings. We have considered every fact as presented, and the applying law to the fact.

We find no ground upon which the accused can be relieved on appeal.

Judgment affirmed.

See dissenting opinion of MONROE, J., 35 South. 716.