(44 South. 848.)

No. 16,672.

STATE v. PETIT.

(Nov. 4, 1907.)

1. JURY—DISQUALIFICATION—EXEMPTIONS.

The fact that a juror may be a justice of the peace or constable or deputy sheriff is not a sufficient cause for challenge under the express terms of section 2, Act No. 135, p. 217, of 1898. Exemption from jury duty is a personal privilege.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, § 264.]

2. SAME.

The fact that a juror may be engaged in operating a gambling game is no sufficient cause for challenge. The law excludes only those persons who have been convicted of some infamous crime. Const. 1898, art. 159.

3. SAME—WAIVER OF OBJECTIONS.

Objections to the service of the jury list, based on the small number of regular jurors present for duty, if not seasonably urged, will be considered as waived.

4. CRIMINAL LAW — TRIAL — MISCONDUCT OF COUNSEL.

Where the counsel for defendant opened a discussion on the subject of lynching negroes for criminal assault on white women, and argued that his client was innocent because he had not been lynched, and the district attorney thereupon replied that negro domination in times past had forced the white people to protect themselves, but that there was no longer any necessity for lynching, and every man, white or black, was entitled to a fair and impartial trial, *held* that, while the whole discussion was exceedingly improper and should have been repressed by the trial judge, the remarks of the district attorney could not be considered as an appeal to race prejudice for the purpose of influencing the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1676.]

(Syllabus by the Court.)

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Prentice Ellis Edrington, Judge.

Pierre Petit was convicted of breaking and entering a certain dwelling house with intent to commit crime, and appeals. Affirmed.

Frederick Anthony Middleton, for appellant. Walter Guion, Atty. Gen., and Louis Hermann Marrero, Jr., Dist. Atty. (Lewis Guion, of counsel), for the State.

LAND, J. Defendant was indicted for feloniously, in the nighttime, breaking and entering a certain dwelling house with the intent to commit the crime of rape, and also for an assault with intent to rape a certain woman then being in said dwelling house.

Defendant was tried and convicted on the first count of the indictment, and, after his motion for a new trial was overruled, was sentenced to imprisonment in the state penitentiary for the term of 14 years. Defendant has appealed from the sentence, and relies for reversal on a number of bills of exception, most of which appertain to the selection of the trial jury.

It appears that the court ordered the jury commissioners to select a venire of 30 additional jurors for service as regular jurors, and also that said special jury was duly drawn. It appeared from the sheriff's return on the venire that 6 of the jurors on the list could not be found, and that 1 was dead. Another juror failed to answer, and 6 were excused by the court, presumably for sufficient cause, and 2 more because of ignorance of the English language. The result was that the trial venire was reduced to 14 jurors, but the accused made no objections to going to trial.

Bill of exception No. 1 was taken to the ruling of the court refusing to sustain a challenge for cause to juror Root, on the ground that he was a constable. Bill No. 2 was taken to a similar ruling in the case of juror Fargot, on the ground that he was a deputy sheriff. Bill No. 4 was reserved to a similar ruling in case of the juror Kerner, who was a justice of the peace.

Bills Nos. 5 and 6 were taken to similar rulings in the cases of two tales jurors, who held commissions as special deputy sheriffs. It does not appear that any one of these five jurors were sworn in, but we infer that all of them were challenged peremptorily by the defendant. Bill No. 6 was taken to the refusal of the court to sustain a challenge to tales juror Schenerman, on the ground that he held a commission as deputy sheriff. The defendant having exhausted all his peremp-

tory challenges, this juror was sworn in as a member of the panel which tried the case.

There is no error in the rulings complained of, since the statute provides that the fact that a juror may be a judge or officer of court shall not be sufficient cause for challenge. Section 2, Act No. 135, p. 217, of 1898; State v. Carter, 106 La. 407, 30 South. 895; State v. Forbes, 111 La. 473, 35 South. 710.

We fail to appreciate the argument that this rule does not apply when five or six officials are summoned to serve on the same jury. You cannot increase zero by addition or multiplication.

Bill No. 3 was reserved to the overruling of a challenge to juror Reach, on the ground that his answers on voir dire showed that he was not a truthful man, in that the juror, after asserting that he was a "stable boy," admitted that he was employed in operating a gambling game, and on the further ground that said Reach, being engaged in a business prohibited by law, was not a competent juror. The trial judge states that, when first questioned as to his occupation, the juror answered jokingly, "Hyland's stable minder," believing that counsel for defendant was aware of his occupation. The judge considered the second ground of challenge as untenable. While the flippant answer of the juror deserved the animadversion of the court, he in the next breath answered frankly enough that he was engaged in conducting a game of chance in a gambling house. While the commissioners might have omitted from the list of jurors the names of persons engaged in gambling pursuits, the law excludes only those who have been convicted of some infamous crime. Const. 1898, art. 159. We see no reversible error in the ruling complained of, even if it was prejudicial, which is not at all clear on the face of the record, which shows that Reach did not serve as a juror.

Bill of exception No. 8 was reserved to certain alleged remarks of the district attorney to the jury. As the statement of the judge must prevail, we transcribe it in full, as follows:

"Counsel for the accused in his argument said:

" 'Gentlemen of the jury, this man, a nigger, is charged with breaking into the house of a white man in the nighttime and assaulting his wife, with the intent to rape her. Now, don't you know that, if this nigger had committed such a crime, he never would have been brought here and tried; that he would have been lynched, and if I were there I would help pull on the rope.'

"In his closing argument the district attorney in reply to the above statement, said:

" 'During the reconstruction days, when we had negro domination in this state, the Kuklux Klans were organized and the best people of the state shouldered their guns for the protection of our white people. During those days white people were thrown into jail and tried by negro justices of the peace and negro juries. Now we have no more negro domination, but a government by the white people, and hence no necessity for lynching.

" 'Every man, white or black, is entitled to and will have a fair and impartial trial, no matter what the charge might be, and the fact that this negro is given a fair trial is no reason why you should believe him innocent.'

"This statement was made as an answer to the remarks made by counsel for the accused, who prompted the same. The court did not believe that said remarks were prejudicial. Counsel for the accused did not ask the court to interfere, and for those reasons did not take any steps to remove from the minds of the jury that which, at no time, the court believed to exist."

The judge does not deny that counsel for the accused objected to the remarks of the district attorney at the time and reserved a bill of exceptions. Otherwise, we assume that the judge would not have signed the bill.

Counsel for the accused, in his zeal for his client, went outside of the record to postulate that it was the custom to lynch all negroes guilty of criminal assaults on white women, and to argue the innocence of the accused from the circumstance that he had not been lynched.

The district attorney, in reply, while admitting the intervention of Judge Lynch in times past, asserted that there was no longer any necessity for lynching; that every man, white or black, was entitled to a fair and impartial trial no matter what the charge might.

be; and that the circumstance that the accused had not been lynched was no evidence of his innocence.

While this discussion of matters outside of the record was highly improper, and should have been, in its inception, repressed by the trial judge, we fail to perceive in the remarks of the district attorney any appeal to racial prejudice for the purpose of influencing the jury. We may add that this inference is re-enforced by the fact that the verdict acquitted the accused of the crime of criminal assault as charged in the indictment.

No bill of exception was taken to the overruling of the motion for a new trial, which is not supported by affidavit or other evidence. Moreover, the motion is not discussed in the brief of counsel for the accused.

We have considered and determined all the points raised by the bills of exception. In the brief of defendant's counsel the point is made that he was not served with the list of the jury which were to pass on his trial, because only 14 of the 30 jurors drawn and summoned participated in the trial. As a matter of fact a correct list of the jurors was served on the defendant, and he made no objections to going to trial on the ground that only 14 jurors were present. There is no precedent for raising such an objection for the first time in the Supreme Court.

Judgment affirmed.