412 So.2d 1029 (1982)
STATE of Louisiana
v.
William EDWARDS.
No. 81-KA-2112.
Supreme Court of Louisiana.
April 5, 1982.
*1030 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Michael Jay Fontenot, Asst. Dist. Attys., for plaintiff-appellee.
Percy A. Ford of Ford & Avants, West Monroe, for defendant-appellant.
WATSON, Justice.[*]
Defendant, William Edwards, was convicted by a unanimous twelve person jury of the second degree murder of Leon Marion Glowski. LSA-R.S. 14:30.1.[1] Edwards was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. On appeal, he assigns five errors by the trial court.

*1031 FACTS
Defendant William "Billy Bird" Edwards was arrested in Memphis, Tennessee, in connection with the armed robbery of a 7-11 store in that city at approximately 1:00 A.M. on October 3, 1980. The vehicle used in the robbery was a 1979 beige and brown Oldsmobile Cutlass, which was registered to Leon Marion Glowski. He and his automobile had been missing since September 6, 1980. His body had been found in Monroe, Louisiana, on September 10, 1980. Death occurred from a skull fracture.
Edwards and two confederates had taken the car from Glowski in Houston, relieved him of $20 and put him in the trunk. They then undertook a nine hour trip from Houston to Monroe. Edwards' mother, father, and sister resided in Monroe. On September 7, after the travelers visited the Edwards' family, Glowski was severely beaten with the Oldsmobile jack handle, tied securely and left to die in a wooded area.
When Edwards was arrested in Memphis he confessed his participation in the homicide. The three men had no previous acquaintance with Glowski and apparently took him and his car on a whim. From the photographs in evidence, there is no doubt that the trio intended Glowski's death.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that his confession to the Memphis police department should have been suppressed. Prior to making the statement, Edwards was taken to the hospital for treatment of a severe cut on the hand. He was then placed in a cell. The arrest was about 2:00 A.M. and questioning commenced about 10:00 A.M. In contrast to State v. Smith, 409 So.2d 271 (La., 1982), Edwards received medical attention before the questioning. He was fully advised of his constitutional rights before he made a statement about the armed robbery and before he made a subsequent statement about the murder. LSA-C.Cr.P. art. 703.[2] Edwards is a high school graduate with one year of training in electronics and stated that he is able to read and write. He not only signed a written waiver of his rights, but also said in a transcribed dialogue that he understood the form and realized *1032 he was not required to say anything. He stated that he had not been threatened; that the statement was free and voluntary; and that the officers had been "exceptionally nice". Edwards indicated that he had felt a compulsion to confess: if he had talked to his mother for any length of time, he would have told her what had happened. The State carried its burden of proof. LSA-R.S. 15:451.[3] The trial court correctly ruled that the statements were completely voluntary, free from extraneous influences, and made after defendant had been thoroughly advised of his constitutional rights. Compare Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
This assignment completely lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The State's opening argument referred to the fact that the defendant and his confederates had been smoking marijuana and it is contended that this was an impermissible reference to other crimes which mandated a mistrial under LSA-C. Cr.P. art. 770(2).[4] The drug use was admissible evidence since it was an integral part of the events immediately preceding the criminal act and part of the res gestae. LSA-R.S. 15:447;[5] 15:448.[6] The motion for a mistrial was properly denied. State v. Haarala, 398 So.2d 1093 (La., 1981).[7]
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the trial court erred in denying his challenge for cause of prospective juror Doris Scott. Doris Scott had been employed in the misdemeanor section of the district attorney's office for three years prior to August of 1977. She had not been associated with *1033 that office for three years and nine months prior to the voir dire.
Now an insurance agent, Doris Scott had worked with Ouachita Finishing and the telephone company after leaving state employment. She testified unequivocally that she could weigh the testimony of all the witnesses in a fair and impartial manner; that her work had never involved felony matters; and that her judgment in the matter would not be in any way affected by her past employment. The defense did not attempt to establish that she was in any way biased or prejudiced. Compare State v. Claiborne, 397 So.2d 486 (La., 1981).
Former employment with a prosecutor's office does not automatically prevent an individual from being a fair and impartial juror. Even current employment in law enforcement has been stated to be nondisqualifying. See State v. Forbes, 111 La. 473, 35 So. 710 (1903); State v. Foster, 150 La. 971, 91 So. 411 (1922); State v. Reese, 250 La. 151, 194 So.2d 729 (1967); and State v. Skelton, 340 So.2d 256 (La., 1976). Compare State v. Simmons, 390 So.2d 1317 (La., 1980) and State v. Lewis, 391 So.2d 1156 (La., 1980). On the basis of her voir dire, there is no reason to find Doris Smith disqualified. Since her relationship with law enforcement was both distant in time and relatively brief, it is not reasonable to conclude that she would be influenced by it. LSA-C.Cr.P. art. 797(3);[8]State v. Jones, 345 So.2d 1157 (La., 1977).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The defense used twelve peremptory challenges. Because Doris Scott cost one, it claims that an obnoxious twelfth juror, John Robert Lee, was not challenged for cause for fear of alienating him if the challenge failed. The state said it would not oppose allowing the alternate juror to replace Lee before the deliberations. However, no motion was made to this effect at the conclusion of the evidence.
Nothing in the voir dire shows Lee as being other than fair and impartial. Grounds for challenging Lee for cause were never stated. LSA-C.Cr.P. art. 795.[9] None were revealed, but the state, in a commendable desire to avoid appellate difficulties, indicated its willingness to allow the thirteenth juror to serve. This alternative was available. Failing to move to substitute the alternate juror before deliberations waived any objection to Lee.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends that the prejudicial effect of four photographs outweighed their probative value. The trial court excluded certain photographs but admitted other gruesome pictures, which were crucial to the question of specific intent to murder. The probative value of the photographs on this issue outweighs their prejudicial effect. The photographs were essential to prove an element of the crime charged, and were properly admitted into evidence. LSA-R.S. 14:30.1.
This assignment lacks merit.
For the foregoing reasons, the conviction and sentence of the defendant, William Edwards, are affirmed.
AFFIRMED.
NOTES
[*] Judges Fred S. Bowes and Nestor L. Currault, Jr., of the Twenty-Fourth Judicial District Court and Edward A. Dufresne, Jr. of the Twenty-Ninth Judicial District Court participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] LSA-R.S. 14:30.1 provides:

"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
[2] LSA C.Cr.P. art. 703 provides:

"A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
"B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
"C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
"D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
"E. An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The State may file an answer to the motion. The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant's testimony cannot be used by the state except for the purpose of impeaching the defendant's testimony at the trial on the merits.
"If the defendant testifies before the jury at the trial on the merits, he can be cross-examined on the whole case.
"F. A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.
"G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
"A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement."
[3] LSA-R.S. 15:451 provides:

"Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
[4] LSA-C.Cr.P. art. 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"(3) The failure of the defendant to testify in his own defense; or
"(4) The refusal of the judge to direct a verdict.
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
[5] LSA-R.S. 15:447 provides:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
[6] LSA-R.S. 15:448 provides:

"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
[7] The jury could have regarded marijuana usage as an exculpating factor in view of the cruel and wanton violence inflicted on Glowski.
[8] LSA C.Cr.P. art. 797(3) provides:

"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ..."
[9] LSA C.Cr.P. art. 795 provides:

"A juror cannot be challenged for cause by the state or the defendant after having been accepted by the challenging party, unless the ground for the challenge was not known by the challenging party prior to acceptance. A challenge for cause must be made before the indictment is read to the jury.
"A peremptory challenge may be made by the state at any time before the juror is accepted by it, and by the defendant at any time before the juror is sworn."