LAND, J.
Defendant was indicted for the murder of Vatuone Giovanni on March 26, 1905, was tried in the May following, was found guilty, without capital punishment, and was sentenced at hard labor for the term of his natural life. Defendant appealed, and for reversal of the verdict and sentence relies on a number of bills of exception, which will be considered so far as may be found necessary and in the order of importance.
Bill No. 3.
The state called one Peter Busilachi to the stand, and the witness was examined, cross-examined, and re-examined. On one of these examinations the witness testified that about three hours before the shooting *387 he heard a violent quarrel between the accused and the deceased, in the course of which the deceased cursed the mother and sister of the accused. Thereupon the district attorney expressed surprise and was permitted .by the court to lay the foundation for contradicting the witness. In his answers the witness admitted that he had previously stated to the district attorney that the deceased and the accused were good friends, and that the witness had never known them to quarrel, hut that “he had forgotten to tell the district attorney that the accused and the deceased had had a quarrel.” Thereupon the district attorney attempted to impeach the witness by asking him if he was not charged with being an accessory before the fact to the murder in question, and by offering in evidence an affidavit made on the day before the trial charging the witness as an accessory to the crime. Defendant’s counsel objected to both questions and affidavit offered for the purpose of impeaching the witness. We infer from the per curiam of the judge, that the question was ruled out because the testimony of the witness was not the best evidence of the fact sought to be elicited. The note of evidence, however, states that the objection to the question was overruled; the reasons assigned being as follows, viz.:
“The purpose of the question being simply to impeach the witness on the stand.”
There can be no doubt, however, that the affidavit was offered and received in evidence for the purpose of impeaching the credibility of the witness.
In State v. Vickers, 47 La. Ann. 1574, 18 South. 639, this court in a well-considered opinion, citing numerous authorities, held that the state cannot impeach witnesses for ! the prosecution, and that, if the sole effect ' of an interrogation is to discredit a witness, such evidence is not admissible. This undoubtedly is the general rule of law, and, as it is admitted that the sole purpose was to directly impeach the credibility of the witness, it is unnecessary to consider the question of indirect impeachment resulting from contradiction by other witnesses. It is patent that the object was to show .that the witness was unworthy of belief, because charged as an accessory to the same murder.
Wigmore, in his recent philosophical work on Evidence, while assailing the accepted reasons for the general rule that “the party is bound by his witness statements,” says:
“It has_ never been doubted that one effect of the rule is to exclude evidence of the witness’ character. This much is clearly forbidden, whatever policy we accept as the support of the rule.” Wigmore on Evidence, vol. 2; p. 900.
Counsel representing the prosecution cite State v. Magoon, 50 Vt. 333, and State v. Harrison, 66 Vt. 523, 29 Atl. 807, 44 Am. St. Rep. 864, as holding that the general rule that a party cannot impeach the character of his own witness does not apply to the state in criminal cases.
We are not prepared to overrule our own and the general jurisprudence on this subject. If the abolition of the time-honored rule is desirable, application should be made to the legislative department of the government.
If the district attorney, knowing that he had caused the witness to be charged as an accessory to the crime, used him for the purpose of convicting the accused, on every principle of fairness he should not be permitted to impeach the credibility of the witness because a part of his testimony was favorable to the defendant. The witness admitted that he had contradictory statements, and there the matter should have ended. The defendant relied on his plea of self-defense, and his testimony that the deceased was the aggressor was to some extent corroborated by the statements of the witness for the prosecution.
We regret to say that the ruling of the trial judge was in clear conflict with the jurisprudence of this state, and his error necessi *388 tates a reversal of the verdict and sentence. We take this occasion to remark that it is a safe rule for trial judges to give the prisoner the benefit of the doubt on all disputed questions of law arising during the progress of the trial.
Bill No. 1.
A plank pierced with a bullet hole was before the jury, subject to their inspection, and the jurors were capable of forming their own opinion as to the Course of the bullet; yet a nonexpert was called by the prosecution to give his opinion as to the position in which the person firing the shot must have stood. Defendant objected to the testimony, and we think that it should have been excluded, but are not prepared to say that the error was prejudicial to the accused.
Bill No. 2.
This exception was taken to a side remark, made by the judge to the sheriff in the presence of the jury, tending to reflect on the nationality of the accused. The judge states that the remark was not intended for the jury, and he doubts whether it was heard by the members of the jury. His per curiam shows that he charged the jury to disregard such remarks, and not to permit them to prejudice the accused. The incident was unfortunate, to say the least of it; but, as the judge realized his error and endeavored to efface its effect, if any, on the jury, we have no reason to believe that it will be repeated on another trial.
Bills No. 4 and No. 5.
These exceptions relate to testimony elicited on objection made as stated in bill No. 3, and need not be considered.
Bill No. 6.
This exception was taken to the refusal of the judge to permit evidence tending to show the bad character of the deceased for peace and quiet. The judge assigns as a reason that there was no sufficient evidence' to prove an overt act on the part of the deceased at the time of the homicide. In his per curiam the judge states that there was no proof of an overt act beyond the testimony, of the accused, which was contradicted by all the physical facts surrounding the homicide. As the case will be tried again, no useful purpose would be subserved by reviewing the evidence. See State v. Golden, 113 La. 791, 37 South. 757, as to the rule of law in such cases and its limitations.
Bill No. 7.
This exception was taken to the following remarks of the district attorney in' his argument to the jury:
“I have investigated the case thoroughly, and I tell you that Jim Gallo is guilty of murder.”
It appears that the district attorney had testified as a witness as to investigations made by him, and expressed his belief of the guilt of the accused as arising from such investigations. The prosecuting officer has the right to press upon the jury any view of the case arising from the evidence. State v. Johnson, 48 La. Ann. 87, 19 South. 213. There is no merit in this bill.
It is therefore ordered that the verdict and sentence appealed from be annulled, avoided, and reversed, and that this case be remanded for further .proceedings according to law.