LAND, J.
Til May, 1900, plaintiff company entered into a contract with Alfrey et al., composing the defendant company, by which the former granted to the latter a restricted right to cut pine timber on several tracts of land containing the aggregate of 1,080 acres. It was distinctly understood and agreed that defendant was to cut timber only on such land as plaintiff’s employes had cut over in getting out timber suitable for hewn ties and piling.
In October, 1900, plaintiff sued out a writ of injunction against the defendants, alleging that they were interfering with plaintiff’s laborers and violating the contract by going into and cutting the timber ahead of the tie makers. The injunction was maintained and perpetuated in the district court, and defendant appealed to the Court of Appeal. While the appeal was pending, plaintiff’s employés cut over all the lands .covered by the contract. On the trial in the Court of Appeal it was admitted that plaintiff had turned over all the lands to defendants and that they were cutting the timber according to the contract. Under these circumstances the' Court of Appeal, though holding that the writ had been properly sued out, considered it useless to perpetuate the injunction, and therefore rendered judgment on March 17, 1902, dissolving the injunction, but condemning defendants to pay all costs up to the time the lands were turned over to them, and condemning the plaintiff to pay the subsequent costs.
Pending said appeal plaintiff instituted a suit on February 14, 1901, against the defendants, to recover damages for timber suitable for hewn ties and piling stock wrongfully used by defendants, to the value of $750, and for “down timber” suitable for saw logs, which defendants refused to take up and left to decay, to the amount of $300, as per contract price. Plaintiff also claimed other damages, making the total amount sued for $1,750.
Defendants pleaded the suit on appeal as lis pendens, and the plea was sustained on March 8, 1901.
On September 4, 1901, plaintiff sued defendants for $3,000 damages and to annul and cancel the contract for alleged violations thereof as set forth in the injunction suit, also for not cutting the timber clean as called for and specified in the contract, and for refusing to pay for stumpage cut under the contract. The amount of damages claimed was made up of the following items: $250, in hands of the plaintiff, deposited by defendants as a guaranty for compliance with the contract; $250, for attorney fees incurred in the injunction suit; $250, for loss of time, expenses, etc., incurred in same suit; $1,000, for piling stock cut in violation of the terms of the contract; $750, “down timber” suitable for saw logs which defendants refused to take up and left to decay; and $500, for timber cut under the contract and not paid for. By amended petition filed February 27, 1903, plaintiff presented his ease anew to meet the plea of lis pendens filed against the original petition. The allegations of both petitions are virtually the same, save that the finality of the judgment in the injunction suit is alleged; the item of loss of time, expense, etc., raised from $250 to $500; and the *390 item of timber cut under tbe contract raised from $500 to $3,500. Tbe prayer was for judgment annulling tbe contract, witb $6,000 damages.
Defendants for answer pleaded the general issue, specially denied a number of tbe items ■of alleged damage, and pleaded tbe injunction suit and judgment as estoppel and res judicata.
In an amended answer defendants specially pleaded tbe two prior suits and judgments as estoppel and res judicata, especially on tbe question of tbe cancellation of tbe contract, and that tbe violation of tbe contract, if any, was technical, and has since been condoned by tbe conduct of tbe parties in acquiescing in tbe continuance of the buisness in accordance with tbe terms of tbe contract. Defendants specially averred that they owed only $99.71 for “stumpage,” which sum they had offered to pay to plaintiff and tendered in open court. Defendants reconvened for $500 for timber sold on 160 acres of land that plaintiff did not own and for $500 for attorney fees incurred, annoyance, time lost, and money expended, occasioned by harassing and malicious lawsuits.
There was judgment in favor of the plaintiff; annulling the contract and condemning tbe defendants to pay $2,200 damages and all costs of suit. Defendants have appealed.
The district judge rendered judgment for a lump sum, and, as be filed no written opinion, tbe process of reasoning by which be reached his conclusion is left to conjecture. Hence we do not know what items of damages were allowed in whole or in part.
In the argument at bar counsel for plaintiff confined their contention to three items, to wit: First, for cutting timber not allowed by the contract; second, for not using “down timber” left by the tie makers; third, for timber cut under the contract and not paid for.
1. It was distinctly agreed and understood that defendants were to cut timber only on such lands as the plaintiff’s tie makers had cut over. In the injunction suit, filed in October, 1900, it was decided that defendants had violated this clause of the contract. The question of quantum of damages was reserved by the pleadings, and therefore not adjudicated.
In the suit filed February 4, 1901, plaintiff claimed $750 on this item of damage, but in the present suit, filed in September, 1901, the demand was increased to $1,000.
Two of plaintiff’s witnesses, expert timber men, familiar with the tracts of land, testified that defendants cut timber suitable for ties and piling and gave estimates as to amounts. Another witness for plaintiff, who had been in the' employ of the defendants, testified that his gang during August and September, 1900, cut between 200,000 and 300,000 feet of heart pine from the lands in question under instructions from defendants’ manager. The only witness for defendants who was in a position to fully controvert the testimony of these three witnesses was the manager, who testified that he had cut no heart timber, except by special permission, to fill an order given by plaintiff.
The estimates of the witnesses Mitchell and Wadlington gave about 750,000 feet of heart lumber, shown by the evidence of one witness to be worth $1.50 per thousand feet. As the quantity is based on estimates, and plaintiff’s demand in the first suit was based on $1 per thousand and in the second on less than $1.50 per thousand, we conclude to allow $750 on this item.
2. Under the contract, defendants were bound to use all “down timber” left by the tie makers, except such logs as were from natural causes unfit for cutting into merchantable lumber. The claim of plaintiff on this item is supported by the testimony of Mitchell, who swore that he had examined and scaled the merchantable logs not used by defendant, and that they amounted to 501,687 feet by actual log measure.
*391 Loring, a mill man, testified that three months before the trial he had ridden over one of the tracts in question and found approximately 25,000 feet of merchantable “down timber”' which had not been used. Defendants’ manager testified that all such merchantable timber had been used, and he is corroborated to a certain extent by a number of his employés, who, however, never went over all the tracts, or any of them, for the purpose of ascertaining the quality of merchantable down timber left on the ground. On this item the evidence in behalf of plaintiff is specific and certain, and is sufficient to maintain an award of $250.
3. This item is for the price of several million feet of lumber alleged to have been cut under the contract and never accounted for by the defendants. This demand was not contained in the suit for damages filed February 14, 1901. In the original petition in this suit filed September 4, 1901, this item appears from the first time as a demand for $500; but in February, 1903, was increased to $3,500 by amendment.
Plaintiff’s argument on this item may be epitomized as follows;
In 1S98 or 1899 Vandegear, parish surveyor, ran the lines of the tracts in question, and from his observations, then and afterwards, estimated, at some time before the trial of this case, that the “stumpage” in all the tracts originally amounted to 8,480,000 feet.
In June or July, 1901, Vandegear estimated the same “stumpage” at 2,410,000 feet;' and in May, 1902, the same expert estimates the same “stumpage” at 1,075,000 feet. In 1900 Mitchell, expert employé of plaintiff, estimated the “stumpage” at 8,500,000 feet. Therefore the stumpage in 1900 must have been 8,400,000 feet. Deducting all the timber that was cut by plaintiff and his author, Dr. May, and what remains on the land, and also what has been accounted for by the defendants, there is a deficit or discrepancy of 2,672,041 feet, which should be charged to the defendant at 50 cents per thousand feet. Further deducting the 750,000 feet covered by the first item, the balance would be 1,-922,041 feet. On the other side, defendants’ manager testified most positively that he scaled every log cut from plaintiff’s lands, kept an accurate account of the scalage, and' has faithfully reported the total to the plaintiff. Under the contract the measurement of the logs was left to defendants, and no complaints were made as to their returns from time to time. There is no direct evidence to show that the defendants have cut more logs than they have accounted for. In the first damage suit no such charge was' made. In the second damage suit, the original petition charged in -effect that defendants had cut 1,000,000 feet, worth $500, which had not been accounted for. By amended petition filed in February, 1903, this demand was inflated so as to cover 7,-000,000 feet, worth $3,500. Mitchell rejmesented plaintiff in the conduct of this litigation, employing counsel and presumably furnishing him with a statement of facts. Why no demand for damages on this item was made in the first suit, and why it was raised from $500 to $3,500 in the second suit, is; not explained by the evidence.
The estimates of Vandegear were made for the years 1898, 1899, 1901, and 1902.' Hence they do not cover the year 1900. Mitchell’s estimate for 1900 was 8,500,000 feet, or 100,-000 feet more than the original estimate of Vandegear.
An estimate of this kind is largely a matter of opinion, is in its nature merely approximative, and per se is insufficient" to charge the defendants with the clandestine appropriation of a large quantity of timber, when opposed by the direct and positive testimony of another witness, who had kept a regular account, to the contrary. Both witnesses; were employed as managers by the respective parties, and so far as bias or interest is concerned stand on the same footing.
*392 In onr opinion, the evidence is insufficient to sustain this item of damages.
It is to be noted that defendants, in accordance with the terms of the contract, deposited $250 in the hands of the plaintiff as a guaranty or security for its faithful performance and that defendants admit judicially that they owe $99.71 for logs cut under the contract
We see no merit in the plea of estoppel and res judicata. The only thing adjudicated in the injunction suit was the defendants had cut timber in violation of the terms of the contract. Plaintiff had the right to sue for damages, or the nullity of the contract, or both. The claim for damages alone in the suit which was dismissed on the plea of lis pendens did not preclude plaintiff from suing for both damages and nullity in the present suit.
We state the accounts between the parties as follows:
Defendants * Dr.
To amount allowed under Item No. 1....... $ 750 00
“ “ “ • 44 “ “ 2 ....... 250 00
" 41 admitted .......................... 99 71
Total ...................................$ 1,099 71
Less amount deposited ....................... 250 00
Balance due ............................. $ 849 71
It is therefore ordered, adjudged, and decreed that the amount allowed by the judgment appealed from be reduced from $2,-200 to $849.71, and that, as thus amended, the said judgment be affirmed, and that plaintiff and appellee pay costs of appeal.