(53 South. 847.)

No. 18,501.

STATE v. BENJAMIN.

(Dec. 12, 1910.)

*(Syllabus by the Court.)*

1. HOMICIDE (§ 190*)—EVIDENCE—THREATS.

After hearing the testimony, showing that the accused was the aggressor and that the deceased had made no hostile demonstration, it was proper for the trial court to rule out any evidence offered by the accused, to prove prior threats.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 400; Dec. Dig. § 190.*]

2. CRIMINAL LAW (§ 1171*) — REMARKS OF DISTRICT ATTORNEY—HARMLESS ERROR.

The making of an improper remark before the jury by the district attorney will not be ground for setting aside a verdict when the jury has received a proper instruction from the trial court that their verdict is to be based on the evidence and not on the remarks of counsel, and when the court does not believe that the remark prejudiced the rights of the accused. The remark complained of was not such an one as the trial court could not instruct away its possible effect.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3126, 3127; Dec. Dig. § 1171.*]

3. WITNESSES (§ 393*)—IMPEACHMENT—EVIDENCE AT CORONER'S INQUEST.

It is permissible under proper instruction from the court as to the effect of the testimony to introduce testimony taken at the coroner's inquest for the purpose of impeaching a witness. However, the court must instruct the jury that the testimony is not to be considered in determining the guilt of the accused, but is to be considered merely in judging of the credibility of the witness whose testimony is sought to be impeached.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1210–1219; Dec. Dig. § 393.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Neill, Judge.

Dan Benjamin was convicted of murder, and he appeals. Affirmed.

Parkerson, Boatner & Gilmore, for appellant. Walter Guion, Atty. Gen., and Thomas M. Milling, Dist. Atty. (R. G. Pleasant, of counsel), for the State.

BREAUX, C. J. The indictment charges Dan Benjamin with having murdered Frank Lovet on the 25th day of August, 1910.

The accused was arraigned and afterward placed on his trial.

After having heard the witnesses, after having taken the evidence, and after having retired to their room for deliberation, the jury returned a verdict of guilty without capital punishment.

During the trial, the attorneys for the accused reserved 10 bills of exceptions, and in this appeal they reduced the different grounds stated in the different bills to substantially the following:

(1) Threats, and the foundation necessary to admit proof of threats.

(2) The utterances of the district attorney in the presence of the jury.

(3) Testimony before the coroner's inquest.

The defense informs us that they abandon six of the bills of exceptions as numbered by them; it follows that there remained four bills of exceptions to be seriously considered.

### Bill of Exceptions No. 4.

This bill relates to the asserted hostile demonstration which defendant's counsel argue to have been made to an extent sufficient to admit evidence of prior threat offered.

Directly, the question is, Did the defense prove a hostile demonstration, and for that reason was evidence of prior threat admissible?

The accused swore to averments for the purpose of proving that the deceased made a hostile demonstration against him at the time that he shot and killed deceased.

The district attorney objected on the ground that there had not been sufficient foundation laid for the introduction of prior threats or prior difficulty.

The district attorney stated that three witnesses for the state, naming them, had contradicted the testimony of the defendant, and had proven by their testimony that the defendant was the aggressor.

Called upon to rule at this point, the trial judge stated that, according to his recollection of the testimony of the three witnesses for the state, who had already testified, and whose testimony was not taken down, the accused was sitting on the bridge, and here follows a full and detailed statement made according to the court's memory.

At this point, the defendant's counsel requested the recalling of the three witnesses in question for the state, for the purpose of recross-examination by them.

The court permitted them to be recalled in order to embody their testimony in the bill of exceptions under Act 113 of 1896.

These witnesses were re-examined. Each of these witnesses in turn appeared and was recross-examined and the testimony of each is particularly set forth and embodied in the bill.

The accused also was re-examined upon the particular subject at issue.

After they had been re-examined, and the evidence had been properly taken down, the court sustained the objection of the state on the ground that the deceased was the aggressor.

The trial court expressed the view that the preponderance of the evidence was that the accused was the aggressor, and that the deceased had not made a hostile demonstration to take the life of the accused, and that he had not placed the accused in a position justifying the plea of self-defense.

Counsel for the accused then reserved a bill of exceptions.

Our learned Brother of the district court complied completely with the precedents laid down by this court. He, by his ruling, placed all the facts before us and thereby we have been enabled without difficulty to pass on the point raised.

We have reviewed his finding, considered his opinion after having reviewed the evidence, and, after having carefully read all the evidence on the point (it was all properly brought up as forming part of the bill of exceptions), we have arrived at the conclusion that no good ground presents itself to set aside the ruling.

We cannot refrain from commending the proceedings and the method followed in bringing up the point in question.

## Bill of Exceptions No. 6.

A witness testified that the character of the accused was good.

The witness was then consigned by the district attorney to defendant's counsel for cross-examination.

While being cross-examined, this witness acknowledged that he felt a keen interest in the defendant because he said the accused is a good man, and because he believed that the accused had killed the deceased in self-defense.

The district attorney asked the witness how he could account for the fact that the deceased was shot in the back, and the witness replied that he could not account for it.

Thereupon, the district attorney remarked, in the presence and hearing of the jury:

"I don't believe Dan could either."

The remark referred to Dan Benjamin, the accused.

The attorney for the accused objected, and the district attorney said:

"No; I don't believe he can account for it."

The judge stopped the talking, and instructed the jury to pay no attention to the remark.

This bill was reserved to the remarks made in the presence of the jury.

The judge, at this point, clearly states:

"I stopped the proceedings and got the attention of the jury and cautioned them with great care not to consider the remark which had been made by the district attorney, and to consider it altogether as if the remark had never been made. I told the jurors that they had to decide the case entirely and solely on the evidence, and must not be affected by, nor pay any attention to, the side remarks of the lawyers. I told the jury that in my opinion the remark made by the district attorney was not a proper one to be made in their presence and hearing, and that they (the jurors) must not be guided nor influenced by the mere belief or opinion of the district attorney nor of anybody else."

We are informed by the trial court's addenda that at the time the remarks were made the defendant had testified in his own behalf.

The district attorney asked the accused how it was that the man was shot in the back. To this, the accused answered that he did not know.

It follows, as stated by the trial judge, that the fact went to the jury—that the defendant could not explain how it was that the deceased was shot in the back.

It was incompatible with the plea of self-defense.

The district judge adds:

"I was convinced when I cautioned the jury not to consider the remark that it did not have any prejudicial effect upon the verdict against the accused."

There is an earnestness and a tone in directing the proceedings that lead to the inference that the ruling is correct, and that the accused has no ground of complaint on that score.

We do not think that we would be justified in straining a technicality in order to avoid a sentence.

This court is not convinced that the jury was influenced against the accused on account of the remarks.

The improper remarks were not such as that the judge could not instruct away all possible effect.

There are a number of decisions upon the subject. The trend of these decisions is not such as to require the interference of this court on a point such as that presented.

We cite the decisions to which we refer: State v. Duffy, 39 La. Ann. 419, 2 South. 184; State v. Ford, 42 La. Ann. 255, 7 South. 696; State v. Johnson, 48 La. Ann. 87, 19 South. 213; State v. Marceaux et al., 50 La. Ann. 1145, 24 South. 611; State v. Fourchy, 51 La. Ann. 241, 25 South. 109; State v. Procella, 105 La. 520, 29 South. 967; State v. Meche, 114 La. 233, 38 South. 152; State v. Gallo, 115 La. 750, 39 South. 1001; State v. Jones, 51 La. Ann. 106, 24 South. 594; State v. Feazell, 116 La. 270, 40 South. 698; Sewing Machine Co. v. Express Co., 42 La. Ann. 594, 7 South. 710; State v. Thompson, 109 La. 301, 33 South. 320; State v. Forbes, 111 La. 489, 35 South. 710; State v. Hogan, 117 La. 864, 42 South. 352; State v. Silva, 118 La. 661, 43 South. 269; State v. Mitchell, 119 La. 374, 44 South. 132; State v. Heidelberg, 120 La. 300, 45 South. 256; State v. High, 122 La. 530, 47 South. 878.

### Bill of Exceptions No. 7.

The complaint of the defendant at this point is that indirectly the state, through the prosecuting officer, introduced testimony taken at the coroner's inquest.

That the courts have often held that the coroner's inquest can only be admitted to prove the death.

The state agreed in the statement that testimony taken at the coroner's inquest was not admissible. Her contention is that, as defendant had attempted to prove that three of her witnesses had, previous to testifying in the case, made statements or declarations contradictory to their testimony on the trial, thereby they had impeached the veracity of their own statements.

The narrative of the bill sets out that three witnesses (naming them) testified that they were present at the killing; that they did not see the deceased make the least hostile demonstration. They gave the position of each at the time of the attack and an account of the different shots fired. They swore that the deceased ran away, pursued by the accused, who continued firing until after the deceased fell on his knees; that after he fell to the ground a cistern faucet fell from his shirt or from his bosom.

The defense produced three witnesses who swore that the general reputation of these witnesses for the state for truth and veracity in the community in which they lived was very bad, and that they would not believe them under oath.

The defense sought further to impeach these witnesses for the state by introducing two witnesses who testified that after the killing they were present at the cane shed on Albania plantation in St. Mary parish, where the killing occurred, and heard these two witnesses telling to the attorneys for the defense where the deceased was standing at the time of the homicide, and stating that he placed his right hand on his right hip pocket.

This statement conflicted with the statement of the two witnesses as given on the stand.

In rebuttal of the testimony of these impeaching witnesses, the district attorney offered in evidence the testimony given by the witnesses before the coroner's inquest (as before mentioned) held on the day of the homicide.

The attorney for the defense objected to this evidence. The objection was sustained.

The district attorney then called Mr. Gladstone Allen, the official stenographer of the coroner's office, who had taken down the testimony of the witnesses for the state at the inquest.

He said that the statement of these state witnesses in regard to the asserted attempt that the deceased had made to place his right hand in his right hip pocket at the time the accused shot him down was similar to the statement made by them before the coroner's jury.

The district attorney announced that he

had offered the testimony in rebuttal of the impeaching witnesses in regard to the particular statements of the state's witnesses.

The objection of the defense was, as before stated, that it was an attempt to get before the petit jury the testimony of the three witnesses contained in the procès verbal of the coroner's inquest; that the testimony had not been given in the presence of the accused and for that reason also was not admissible.

We are informed by the narrative in the bill that the court, before permitting the witnesses to testify, instructed the jury in regard to the manner of impeaching a witness; that he said to the jury that the evidence of what the witness said on a prior occasion is not to be considered as substantive evidence in the case on trial; that they were to consider the impeaching testimony only and solely for the purpose of the impeachment— i. e., it impeaches, discredits, or destroys the testimony of the same witness on the trial.

The trial court was at some pains to instruct the jury at some length upon the subject.

His instruction covered the subject fully, and he would not instruct them again on the subject in his general charge.

There was no bill of exceptions reserved to the general charge.

He then added:

"I find ample authority from the text-writers on criminal law, and from the decisions of our Supreme Court, that, when a witness has been impeached as to a particular statement, made upon the witness stand, by proof of his having made an inconsistent statement on a prior occasion, then it is permissible to prove in rebuttal that on a prior occasion, and at a time not suspicious, the same witness made a statement as to the particular fact consistent with or similar to the statement given by him at the trial. The corroborating witness, however, is not permitted to go into details and relate what the witness said on former occasion, hence I sustained the defendant's counsel's objection to the introduction of the procès verbal of the coroner's inquest."

We find no error in this ruling. The witness is corroborated by a method of proof that has received the approval of this court. The text-writers also are in line with the general principle. State v. Waggoner, 39 La. Ann. 923, 3 South. 119, and decisions and text-writers cited and quoted from. See, also, State v. Fahey, 35 La. Ann. 9; State v. Melton, 37 La. Ann. 77; State v. Robertson, 38 La. Ann. 618, 58 Am. Rep. 201.

As to the applicability of the principle:

In that respect, it offers greater difficulty.

In this instance, the testimony taken at the coroner's inquest gives rise to the serious objection.

It was not offered to prove the facts sworn to before the inquest. It was sought to sustain the testimony of the prosecution on that one point.

If these witnesses, not under oath, had stated some time prior a particular fact which was pertinent in proving guilt, it would have been admissible in corroboration of the witnesses whose testimony was attacked on the particular point. Of course, it would not have been admissible to prove guilt.

For the same reason, testimony before the coroner's inquest, to the extent stated, was admissible only for the purpose of sustaining the testimony. This is amply sustained by precedent. The testimony, if the jury heeded the instruction given by the district court (and we have no reason to infer that they did not), did not go, as relates to its effect, one iota further than it was intended it should have effect under the decisions of this court in regard to this point.

### Bill of Exceptions No. 10.

This exception brought up all the different grounds before reviewed by us.

This is a good and proper practice on the part of a defense. It enables the district judge, if any error has been committed, to set aside the verdict, and avoid the vexations and the expenses and all delays of an appeal.

The accused, in his trial, has received all the consideration due to the rights of an accused.

No question of error of law has arisen which would justify us in setting aside the court's finding.

As to the facts, a jury of the vicinage, competent, we infer, to pass upon the questions of facts, has passed upon the case.

We have only one other duty to perform at this time. It is to affirm that which has been done as relates to propositions of law.

For reasons stated, the verdict, sentence, and judgment of the lower court are affirmed.